**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ALBERT J. MOORE,
                              Plaintiff,

         v.                                                    No. 11-CV-952
                                                                    (TJM/CFH)

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                              Defendant.

_____

**APPEARANCES:**                          **OF COUNSEL:**

OLINSKY LAW GROUP                    HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
300 S. State Street
5th Floor, Suite 520
Syracuse, New York

HON. RICHARD S. HARTUNIAN          ELIZABETH D. ROTHSTEIN, ESQ.
United States Attorney for the          Special Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

         Plaintiff Albert J. Moore ("Moore") brings this action pursuant to 42 U.S.C. §

405(g) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying his application for benefits under the Social Security Act.

Moore moves for a finding of disability and the Commissioner cross-moves for a

_____

         [1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

judgment on the pleadings.  Dkt. Nos. 12, 16.  For the reasons which follow, it is recommended that the Commissioner's decision be remanded.

## I. Background

### A. Facts

Born on February 19, 1970, Moore was thirty-eight years old when he applied for disability benefits.  T. 24-25.[2]  Moore graduated from high school and completed two years of vocational training, though he always required tutors to assist him with his work.  T. 24-25, 29.  Moore previously worked as a (1) case sorter, loading, stacking, unstacking, and counting goods and totes which were placed on or removed from pallets for shipping; (2) dishwasher; and (3) hydraulic press operator.  T. 30, 32- 38.  Moore alleges disability from multiple impairments including his right shoulder, lower back, knees, left hand, obesity, sleep apnea, depression, and hearing.  T. 39-43.

### B. Procedural History

On August 7, 2009, Moore filed an application for disability insurance benefits and social security income ("SSI") pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. claiming an alleged onset date of October 22, 2008.  T. 161-70.  That application was denied on October 28, 2009.  T. 54-65.  Moore requested a hearing before an administrative law judge ("ALJ"), Thomas Tielena, which was held on January 5, 2011.  T. 21-46, 66-153.  In a decision dated February 4, 2011, the ALJ held that

---

[2]"T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Docket No. 8.

Moore was not entitled to disability benefits. T. 9-20.  Moore's counsel filed a timely request for review with the Appeals Council and on June 22, 2011, the request was denied, thus making the ALJ's findings the final decision of the Commissioner.  T. 1-8. This action followed.

## II. Discussion

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Berry, 675 F.2d at 467.  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  42 USC § 405(g) (2006); Halloran, 362 F.3d at

## B.  Determination of Disability[3]

"Every individual who is under a disability shall be entitled to a disability. . .

benefit. . . ."  42 U.S.C. § 423(a)(1) (2004).  Disability is defined as the "inability to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment . . . which has lasted or can be expected to last for a

continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically

determinable impairment is an affliction that is so severe that it renders an individual

unable to continue with his or her previous work or any other employment that may be

available to him or her based upon age, education, and work experience.   Id. §

423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical

and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the

impairment is "based [upon] objective medical facts, diagnoses or medical opinions

inferable from [the] facts, subjective complaints of pain or disability, and educational

background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018(NRB),

2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d

1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based upon 20 C.F.R. §

---

[3] While the SSI program has special economic eligibility requirements, the
requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI)
and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are
identical, so that "decisions under these sections are cited interchangeably."  Donato v.
Sec 'y of Health and Human Servs., 721 F.2d 414, 418 n. 3 (2d Cir.1983) (citation
omitted).

404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). The plaintiff bears the initial burden of proof to establish each of the first four steps. DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

### C. ALJ Tielena's Findings

Moore, represented by counsel, testified at the hearing held on January 5, 2011. T. 21-46 (transcript from the administrative hearing); 49-53; 154-60. Using the five-step disability sequential evaluation, the ALJ found that Moore (1) had not engaged in substantial gainful activity since October 22, 2008, the alleged onset date; (2) had the following severe medically determinable impairment, a right shoulder impingement; (3)

did not have an impairment, alone or in combination, sufficient to meet the listed impairments in Appendix 1, Subpart P of Social Security Regulation Part 404; (4) maintains:

> the Residual Functional Capacity [("RFC")] to lift ten pounds frequently with his right arm. He should not perform overhead activity with his right arm. . . [He] has no limitations to sitting, standing, . . . walking[, or] . . . lifting or carrying with his left arm. He has no manipulative, communicative, visual, environmental, or postural limitations. This is consistent with the ability to perform work at all exertional levels, except those jobs that require bilateral overhead lifting of over ten pounds

and thus, (5) given his age, education, work experience, and RFC, was "capable of performing past relevant work as a factory worker in a pharmaceutical product packing plant [as t]his work does not require the performance of work-related activities precluded by the claimant's [RFC] . . . ." Therefore, a determination of not disabled was made.

### D.  Moore's Contentions

Moore first contends that the ALJ's residual functional capacity ("RFC") finding was not supported by substantial evidence because (1) the ALJ failed to adequately develop the record; (2) the ALJ failed to apply the Psychiatric Review Technique; and (3) the ALJ failed to provide function by function analyses. Second, Moore states that the ALJ failed to properly address his credibility. Third, Moore contends that the ALJ failed to support his Step 4 and 5 conclusions with substantial evidence.

### 1. RFC

### i. Failure to Develop the Record

An ALJ has an affirmative duty to develop the administrative record during Social Security hearings, even when the claimant is, as in this case, represented by counsel. See Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citations omitted); see also 20 C.F.R. § 404.1512(d) (describing Commissioner's duty to develop a "complete medical history for at least the [twelve] months preceding the month in which [claimant] file[s an] application . . . ."); 20 C.F.R. § 404.1512(e)(explaining how the Commissioner will attempt to retrieve the entire medical history from claimant's treating sources as opposed to always seeking consultative examinations). Accordingly, "[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citations omitted); see also Roat v. Barnhart, 717 F. Supp. 2d 241, 264 (N.D.N.Y. 2010) (holding that where a "medical record paints an incomplete picture of [claimant's] overall health during the relevant period, as it includes evidence of the problems, the ALJ had an affirmative duty to supplement the medical record, to the extent it was incomplete, before rejecting [claimant's] petition.") (internal quotation marks and citations omitted).

In this case, Moore contends that the ALJ's failure to contact his treating physicians for medical source statements ("MSS") or function-by-function analyses constitutes a breach of the ALJ's duty to develop the record. See Funk v. Astrue, No. 10-CV-602 (MAD), 2012 WL 501017, at *4 (N.D.N.Y. Feb. 15, 2012) (explaining the ALJ's duty to obtain either a "MSS or RFC Assessment from plaintiff's treating physician[, or at least] . . . contact plaintiff's treating physician in an attempt to obtain an

assessment.") (citing cases).

> Because "[t]he expert opinions of a treating physician as to the existence of a disability are binding on the factfinder," it is not sufficient for the ALJ simply to secure raw data from the treating physician. What is valuable about the perspective of the treating physician—what distinguishes him from the examining physician and from the ALJ—is his opportunity to develop an informed <u>opinion</u> as to the physical status of a patient. To obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician that makes his evidence so much more reliable than that of an examining physician who sees the claimant once and who performs the same tests and studies as the treating physician. It is the <u>opinion</u> of the treating physician that is to be sought; it is his <u>opinion</u> as to the existence and severity of a disability that is to be given deference.

<u>Peed v. Sullivan</u>, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991).  Thus, "[a]lthough the regulation provides that the lack of such a [MSS] state will not render a record incomplete, it nevertheless promises that the Commissioner will request one . . . regardless of whether the record contains a complete medical history."  <u>Funk</u>, 2012 WL 501017, at *5 (citations omitted).  The failure of an ALJ to contact a treating physician to provide a MSS or function by function analysis "constitutes a breach of the ALJ's duty to develop the record, and provides a basis for remand."  <u>Lawton v. Astrue</u>, No. 08-CV-137 (LEK/DEP), 2009 WL 2867905, at *16 (N.D.N.Y. Sept. 2, 2009) (citing cases).

In his decision, the ALJ gave considerable weight to the opinions of treating physicians Drs. Thompson, Paarlberg, and Setter.  T. 18.  Dr. Thompson treated Moore from October 27, 2008 through December 4, 2009.  T. 269-273, 276-77, 331-32, 334-35, 346-48, 373-74.  The ALJ relied upon treatment notes from November 2008, just prior to Moore's surgery.  On November 5, 2008, Moore was complaining of pain levels

of two to three out of ten and difficulties with his daily activities, such as lifting a gallon of milk and dressing himself.  T. 334.  Moore was attending physical therapy and reporting that it was helping.  Id.  Inspection of his right shoulder was unremarkable with some limited ranges of motion; however, the pain had improved and while Dr. Thompson did not recommend Moore return to work at that time, the doctor did expect Moore to return to light duty work in a week.  T. 335.  When Moore returned on November 12, 2008, the pain had improved, lessening to a one to two out of ten, and generally being controlled with pain medication.  T. 273.  Moore's range of motion improved, there was no swelling or tenderness to palpation, and Dr. Thompson approved Moore for light duty work "lifting no more than 5 pounds with his right arm." Id.  When Moore returned on December 5, 2008, Dr. Thompson indicated he was back to working light duty, "without difficulty or pain . . . [Moore was] almost back to [his] baseline," and Dr. Thompson anticipated that within a few weeks Moore would "return to work full duty."  T. 269-70.  A few weeks later, when Moore returned for another follow-up, Dr. Thompson indicated increased pain, most likely due to "increased physical activity . . . since going back to work light duty . . . [h]owever, it [wa]s not clear to [Dr. Thompson] why [Moore's] should [wa]s so diffusely painful."  T. 346-47.

Dr. Paarlberg, a board certified orthopaedic surgeon, saw Moore on multiple occasions.  On the first, Moore presented with complaints of right shoulder pain with little range of motion.  T. 369.  On October 18, 2009, Dr. Paarlberg opined that Moore's degree of disability was "temporary, partial, and moderate" and that he "could return to a modified duty position with the following restriction: he should not be required to lift, push or pull more than 15 pounds with the right arm and he should not be required to

use the right arm above shoulder level." T. 370. On January 26, 2010, Dr. Paarlberg indicated that Moore was again complaining of significant pain and little range of motion in his shoulder. T. 376. Dr. Paarlberg ultimately concluded that Moore had "multiple subjective complaints and minimal objective findings . . . a mild partial disability [with] . . . no [further] need for treatment[, and that] Moore could return to work with no overhead lifting of more than 10 lbs with the right arm." T. 377. The ALJ noted this ten pound overhead lifting requirement in his decision. T. 18.

Dr. Setter treated Moore from November 12, 2009 (T. 437) through September 23, 2010 (T. 412). In Dr. Setter's later consultations with Moore, he indicated that Moore's pain "was out of proportion to what you would expect." T. 431. Dr. Setter observed that Moore was exhibiting no resistance whatsoever when Dr. Setter was attempting to assess his range of motion. T. 428. Dr. Setter indicated that Moore should be prohibited from "lifting, pushing, or pulling with the right upper extremity greater than 10 pounds . . ., overhead activity [and] . . . repetitive activities with the shoulder." Id. Dr. Setter also concluded that while "the remainder of [Moore's] disability status [was] up to the Pain Clinic [as to] whether or not they th[ought Moore] ha[d] complex regional pain syndrome" his only limitations on Moore's activity would be confined to his shoulder. Id. Dr. Setter maintained this opinion and limitation on activity from February 25, 2010 through September 23, 2010. T. 412, 415, 419, 422, 425, 428. In his September 23 consultation, Dr. Setter indicated that Moore's pain remained "out of proportion to what [Dr. Setter] would expect," and that Moore should attend additional vocational training as he had "reached maximum medical improvement with regard to his shoulder." T. 412. The ALJ relied upon Dr. Setter's statement regarding Moore's

physical limitations in his decision denying benefits.  T. 18.

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms.  Martone v. Apfel, 70 F. Supp. 2d 145,150 (N.D.N.Y. 1999); 20 C.F.R.  §§ 404.1545, 416.945.  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient."  Martone, 70 F. Supp. 2d at 150.  The ALJ relied upon two treating physicians who provided specific physical limitations with regard to lifting, pushing, pulling, and overhead movement in determining Moore's RFC.  The fact that these opinions were not presented on Social Security Administration forms entitled RFC Assessment or Medical Source Statement do not detract from the value of the opinions provided.  Consistent with the logic outlined in Peed, and relied upon by this district when determining whether or not there is a gap in the record which the ALJ has a duty to supplement, no such void exists here where the ALJ cited to quantitative lifting restrictions supported by the informed opinion of treating physicians.  Both Drs. Paarlberg and Setter had the opportunity to treat Moore for several months and their notes indicate both test results and informed opinions as to the existence and severity of Moore's shoulder impairment and Moore's subsequent restrictions.

To the extent Moore contends that the opinions rendered by these physicians, in conjunction with his Worker's Compensation Claim, are unclear and require further explanation, such contentions are meritless.  It is true that disability findings in Workers' Compensation cases are not binding on the ALJ and that, where such disability

determinations are made, the ALJ should "make every reasonable effort to recontact . . . treating sources for clarification . . . [as to such determinations where] the bases for such opinions are not clear." Lackner v. Astrue, No. 09-CV-895 (NAM), 2011 WL 2470496, at *3 (N.D.N.Y. May 26, 2011). It is also true that these physicians quantified Moore's disability in percentages and terms of total, partial, permanent, and temporary. Had those been the only descriptions of disability, even in the face of "objective medical evidence . . . to support [an] . . . opinion of disability," clarification would need to be made by seeking a MSS to prevent "vague, and . . . unhelpful" determinations of disability. Id. at 2011 WL 2470496, at *3-4 (citations omitted). However, in this case, both Drs. Paarlberg and Setter provided specific exertional and nonexertional limitations sufficient upon which to determine a RFC. The fact that they were rendered in a Workers' Compensation claim does not alter the conclusion that these treating physicians felt that Moore was limited to lifting between ten to fifteen pounds on his right side and should be precluded from pulling, pushing, and engaging in overhead movements with his right arm.

To the extent that Moore contends that conclusions should not have been based upon the final few appointments with the treating physicians, such claims are also meritless. Expecting the ALJ to discuss, compare, and contrast each of the individual appointments and notes of the physicians is inappropriate. See Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) ("Where, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he . . . have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion on disability") (citations omitted); Miles v. Harris, 645 F.2d 122, 124 (2d Cir.

12

1981) ("Notwithstanding the apparent inconsistency between [two medical] reports . . . we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony.").  Based upon the extended treatment relationship with Dr. Setter, and the fact that he had maintained the same conclusion on Moore's restrictions for months, the evidence of record makes it clear why the ALJ relied upon, and cited to, Dr. Setter's final few conclusions in his treatment notes.

Furthermore, for the same reasons cited above, the ALJ was not obligated to further contact and clarify the opinions of Drs. Davis and Smallman.  Dr. Davis treated Moore at the pain clinic, indicating that Moore was 100% disabled.  T. 387-88.  Dr. Davis provided no other findings for disability.  Moreover, prior to this date, Dr. Davis had adopted the same disability findings as Dr. Setter.  T. 396, 400, 409.  Dr. Smallman performed the arthroscopic surgery on Moore and continued to treat him for a few months post-operatively.  T. 299, 300-01, 303-10, 314-17, 440, 443.  Post-operatively Dr. Smallman indicated that Moore was substantially behind in his recovery due to his lack of participation in physiotherapy.  T. 299-300.  After beginning therapy, Dr. Smallman noted that Moore was making progress, but as of September 4, 2009 he was still fully disabled.  T. 443.  By September 28, 2009, Dr. Smallman reported Moore's continued "inability or unwillingness to move [his right] arm," concluding that there were "no significant local findings other than an absence of voluntary motion."  T. 440.  Such findings were consistent with those noted by Drs. Setter and Paarlberg, indicating that further treatment was not warranted and that Moore's symptoms were inconsistent with the objective findings.  Moreover, such medical findings were wholly inconsistent with Dr. Davis's opinion that Moore was totally disabled.  Accordingly, the ALJ's decision not

to discuss these physicians in greater detail was appropriate given the fact that, despite the inconsistencies, the ALJ was not required to reconcile all factual disputes so long as the RFC determination was supported by substantial evidence.

In this case, the RFC determination was supported by such. Both Drs. Setter and Paarlberg opined similar lifting, manipulative and postural restrictions for Moore. These were supported by the minimal objective findings noted throughout all of the medical records. These were also supported by Moore's testimony that he could continue to assist with light housework, walked around the house to keep busy, and engaged in leisure activities of reading and lounging all day. To the extent that Moore contends additional functional limitations should have been contemplated or found, Moore failed to identify the evidence of record which supports further functional limitations. Proper v. Astrue, No. 10-CV-1221 (GTS/DEP), 2012 WL 1085812, at *13 (N.D.N.Y. Feb. 28, 2012) ("The plaintiff bears the burden to show that her RFC is more limited than that found by the ALJ.") (citing cases).

Therefore, the Commissioner's decision on this issue is affirmed.

## ii. Psychological Review Technique

As previously stated, in order to be considered disabled, a claimant must suffer from either a medically determinable physical or mental impairment. 42 U.S.C. § 1382(a)(3)(A). When evaluating a mental impairment, there is a "special technique" outlined in 20 C.F.R. § 404.1520a which requires consideration of four areas of potential limitation: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." Id. §1520a(c)(3). Where

14

evidence of a colorable mental impairment has been proffered, failure to engage in the

"special technique" generally requires remand.  Kohler v. Astrue, 546 F.3d 260, 266-69

(2d Cir. 2008); see also Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005)

("holding that where a claimant has presented a colorable claim of mental impairment,

the social security regulations require the ALJ to complete . . .  [the special technique].

Failure to do so requires remand.") (citations omitted).

        In the written decision, an ALJ:

> must incorporate the pertinent findings and conclusions
> based on the technique. The decision must show the
> significant history, including examination and laboratory
> findings, and the functional limitations that were considered
> in reaching a conclusion about the severity of the mental
> impairment(s). The decision must include a specific finding
> as to the degree of limitation in each of the functional areas
> described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).  "Current regulations do not require completion of the

Psychiatric Review Technique Form . . . by the ALJ, but do require that his or her

decision document application of the special technique."  Echandy-Caraballo v. Astrue,

No. CA 06-97M, 2008 WL 910059, at *3 (D.R.I Mar. 31, 2008) (citing 20 C.F.R. §

404.1520a(e)(2)).

        In order to engage in the special technique, Moore must first present a colorable

mental impairment.  The ALJ found that Moore offered no evidence of depression as he

"ha[d] never been treated by a psychiatrist or psychologist."  T. 15.  Moore's medical

records from his treating physicians failed to show that he was ever treated for any sort

of mental health issues.  Furthermore, Moore did not include depression as a basis for

disability on his application.  T. 200.  Moore's depression was discussed during his

testimony whereupon he stated that he was depressed most of the day which had affected his sleeping habits and appetite. T. 42-43. However, Moore also stated that he was still able to do light duty housework, cook his own meals in the microwave, and lounge and read throughout the day. T. 43. The ALJ concluded that Moore's alleged depression was non-severe, "caus[ing] no more than minimal limitation[s] in [his] . . . ability to perform basic mental work," as the record was devoid of entries "that his alleged mental illness cause[d] him any limitations in activities of daily living, social functioning, or concentration, persistence, and pace. Moreover, [Moore] has experienced no episodes of decompensation . . . of extended duration." T. 15. As Moore failed to present any medical evidence demonstrating mental impairments, other than his own subjective testimony, he has failed to establish a colorable impairment requiring application of the special technique. See 20 C.F.R. § 404.1508 (explaining that "impairment[s] must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [plaintiff's] statement of symptoms."); see also Fountain v. R.R. Ret. Bd., 88 F.3d 528, 532 (8th Cir. 1996) (holding that where "there is no credible evidence that [plaintiff] suffers from a medically determinable mental impairment," the failure to engage in the special technique is, at best, harmless error which does not require remand or reversal).

Moreover, to the extent that such information should have been considered and applied within the informal confines of the special technique, such evaluation occurred. The ALJ had no objective medical evidence to include in his analysis. In fact, that only indication of depression was Moore's conclusory testimony. When evaluating Moore's activities of daily living and non-existent complaints about socialization and

concentration, persistence or pace, as well as considering Moore's extensive work history, the ALJ correctly quantified the depression as non-severe because the evidence "establishes only a slight abnormality . . . which would have no more than a minimal effect on [Moore's] ability to work."  Echandy-Caraballo, 2008 WL 910059, at *6 (internal quotation marks and citations omitted).  Accordingly, to the extent that any failure to comply with the mechanics of the special technique could be found, it is harmless error.

Accordingly, remand is not necessary and the Commissioner's decision on this issue should be affirmed.

### iii.  Physical Function-by-Function Analysis

Moore contends that the ALJ erred when he failed to account for a physical function-by-function analysis which detailed Moore's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, and crouch.  Pl. Mem. of Law (Dkt. No. 12) at 19. Instead, the ALJ determined that Moore could lift ten pounds frequently and should be prohibited from performing overhead activity with his right arm, but that otherwise Moore had no limitations sitting, standing, walking, or lifting and carrying with his left arm.  T. 16.  Moreover, Moore did not possess any manipulative, communicative, visual, environmental, or postural limitations.  Id.

A function-by-function analysis requires the ALJ to express "the RFC . . . [not] in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' . . . .," but instead in terms "of the individual's physical and mental capacities," so that it is "possible to determine whether the individual is able to do past relevant work . .

. .” SSR 96-8p.  In his decision, the ALJ did indicate the various lifting and postural

limitations which Moore was subjected to.  To the extent Moore contends there should

have been additional limitations, for the alleged back and joint pain which he testified to

at his hearing but were found to be non-severe impairments, those arguments are

meritless for the same reasons stated above.  Similar to his mental health impairments,

his alleged joint and back pain were never documented during his visits to his treating

physicians.  Thus, as Moore provided no objective evidence of his impairments outside

of those already assessed by the ALJ, namely his right shoulder, such additional

restrictions to his RFC are inappropriate.

However, to the extent the RFC currently provided by the ALJ is deemed

insufficient, it is unclear whether the Second Circuit views “non-compliance with SSR

96-8p [a]s per se grounds for a remand.”  Desmond v. Astrue, No. 11-CV-818 (VEB),

2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (citing cases from circuit courts and

the Second Circuit districts indicating that, in the other circuits, “a function-by-function

analysis is desirable, but not an absolute requirement if the rationale for the ALJ’s RFC

assessment can be readily discerned,” and noting the discrepancies within the Second

Circuit).  Recently, the Northern District adopted the rulings of the sister circuits holding

“that, in limited circumstances, the ALJ’s failure to provide a function-by-function

analysis might constitute harmless error, provided that the absence of the analysis did

not frustrate meaningful review of the ALJ’s overall RFC assessment.”  Id. 2012 WL

6648625, at *6.

For the reasons cited supra, it is clear that Moore’s physical RFC limitations were

supported by substantial evidence.  Accordingly, to the extent that a more detailed

function-by-function analysis was desired, but not provided, such an omission is at best harmless error and remand is inappropriate.

Accordingly, the Commissioner's decision on this issue should be affirmed.

### 2. Subjective Complaints of Pain

The ALJ determines whether an ailment is an impairment based on a two-part test. First, the ALJ must decide, based upon objective medical evidence, whether "there [are] medical signs and laboratory findings which show . . . medical impairment(s) which could reasonably be expected to produce [such] pain. . . ." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 81 (N.D.N.Y. 2005); 20 C.F.R. § 404.1529 (2003). This primary evaluation includes subjective complaints of pain. 20 C.F.R. § 404.1529 (2003). "'Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.'" Barringer, 358 F. Supp. 2d at 81 (quoting Crouch v. Comm'r of Soc. Sec. Admin., No. 6:01-CV-0899 (LEK/GJD), 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003).

An ALJ must consider all symptoms, including pain, and the extent to which these symptoms are consistent with the medical and other evidence. 20 C.F.R. § 404.1529 (2003). The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment. See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978). The ALJ must

consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (i)  [The claimant's] daily activities;

> (ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;

> (iii) Precipitating and aggravating factors;

> (iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;

> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;

> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2003).

Moore claims that his credibility was inappropriately questioned because the ALJ did not integrate all of Moore's alleged symptoms of pain and alleged limitations in his opinion.  However, the ALJ's conclusion that Moore's statements were not fully credible is supported by substantial evidence.  As discussed above, the ALJ noted that multiple treating physicians felt that Moore had relatively minor lifting, manipulative, and postural restrictions and indicated that Moore's subjective complaints were inconsistent with what would be expected for his injury, especially after surgery.  Moreover, the degree of Moore's limitations were also questioned by multiple treating physicians who noted Moore's uncooperativeness and lack of motivation when doing range of motion

exercises.

To the extent that Moore contends that his testimony regarding his pain limitations stemming from his joint, back, and left hand should have been considered differently, such contentions are also without merit. The record upon which the ALJ relied indicated a lengthy work history of approximately ten years after Moore was required to have his left fingers amputated. T. 27. Moreover, Moore stated that this did not limit his ability to work and his finger and hand dexterity was deemed intact by Dr. Sirotenko. T. 27, 357. Moreover, Moore's activities of daily living indicate that he could bathe and dress himself, requiring no assistance getting changed or on and off an examination table; walk around in attempts to keep busy during the day; engage in light housework; and read or lounge to pass the time. T. 43, 357. Moore's testimony that he was unable to do more laborious tasks, like snow blow, remain consistent with his current RFC which limit shoulder movement and lifting.

Furthermore, Moore's current contentions of additional disabling pain and restrictions are vitiated by his failure to undergo treatment for his joint or back pain and his depression. "A longitudinal medical record demonstrating an individual's attempts to seek medical treatment . . . and to follow that treatment once it is prescribed . . . [assists in] judging the credibility of the individual's statements." SSR 96-7p, 1996 WL 374186, at *8. A claimant may be deemed "less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical . . . records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." Id.

As "[i]t is the function of the [Commissioner], not the reviewing courts, to resolve

evidentiary conflicts and to appraise credibility of witnesses, . . . [i]f the [Commissioner's] findings are supported by substantial evidence . . . the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec., Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (citations and internal quotation marks omitted).  Accordingly, for the reasons cited above, the ALJ's decision to accord Moore's testimony less credibility is supported by substantial evidence in the record.

Therefore, the Commissioner's decision on this issue is affirmed.


### 3. Return to Past Employment or Other Substantial Gainful Employment

The ALJ determined that Moore could perform his past relevant job as a factory worker as well as, in the alternative, perform most medium and light work and the full range of sedentary work.  T. 19-20.  The ALJ relied upon application of the grids at step five, failing to employ the expertise of a vocational expert ("VE").

At step four of the disability analysis, plaintiff has the burden to show both an inability to return both to his or her previous job as well as the former type of employment.  Jock v. Harris, 651 F.2d 133, 135 (citations omitted).

> Thus, at the hearing level, the ALJ must, first, define the claimant's RFC and, second, determine whether this RFC will permit the claimant to meet the actual physical and mental demands of the type of work that she previously performed . . .  The ALJ may discharge his responsibilities with regard to the second prong by referring to the Dictionary of Occupational Titles (hereinafter "DOT") for a definition of a particular job as it is ordinarily performed throughout the national economy.

French v. Apfel, 62 F. Supp. 2d 659, 664 (N.D.N.Y. 1999) (citations omitted).

Categorization of employment demands require "explicit findings regarding the actual physical and mental demands of [p]laintiff's previous work." Id. (citations omitted).

The ALJ determined that Moore could lift ten pounds frequently and was prohibited from overhead activity. According to Moore's testimony, his prior job required him to lift boxes, never above the height of his knees, weighing at most thirty pounds and frequently around twenty pounds. T. 34-35. Moreover, the DOT indicated that Moore's former type of employment required the RFC to lift twenty to fifty pounds occasionally and ten to twenty-five pounds frequently. Pl. Mem. of Law (dkt. No. 12) at 23; Defs. Mem. of Law (Dkt. No. 16) at 23. The ALJ determined that the RFC was compatible with both sets of physical demands. T. 19.

The ALJ's analysis, pursuant to the RFC determination which is supported by substantial evidence, is not supported by substantial evidence because it fails to explain how Moore would be able to frequently lift up to fifteen pounds more than the ALJ determined was possible. Moreover, the ALJ failed to discuss what, if any, consequences stemmed from Moore's prohibition against overhead activity with respect to working in this industry. As such, the ALJ's opinion should be reversed.

The ALJ then engages in an alternative step five analysis, whereby he determines that the grids indicate Moore is not disabled. During a step five analysis the ALJ may apply the Grids or consult a VE. See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2003). However, reliance on the grids is inappropriate when a plaintiff has both exertional and nonexertional impairments which limit the range of work which he or she can perform. Rosa, 168 F.3d at 78 (citations omitted).

Nonexertional limitations include the ability to reach, such as overhead movements.  20 C.F.R. § 404.1569a(c)(vi); SSR 85-15 (defining "[r]eaching [as the] extending the hands and arms in any direction . . . . "); see also McFadden v. Astrue, No. 08-CV-144-Oc-GRJ, 2009 WL 3158183, at *10 (M.D.Fl. Sept. 28, 2009) ("An inability to perform activities involving overhead reaching constitutes a nonexertional limitation.").  Reaching is "a[n] activit[y] required in almost all jobs."  SSR 85-15. "Significant limitations of reaching . . . may eliminate a large number of occupations a person could otherwise do.  Varying degrees of limitations would have different effects, and the assistance of a V[E] may be needed to determine the effects of the limitations." Id.

As the ALJ determined that Moore's RFC included a prohibition against overhead reaching, this severe nonexertional impairment needed to be considered in combination with Moore's exertional impairments restricting his ability to frequently lift objects.  "While it may be that a VE will be able to identify unskilled sedentary jobs, which [Moore] could perform that do not require overhead reaching, it was nevertheless improper for the ALJ to exclusively rely upon the grids to direct a finding of not disabled . . . ."  McFadden, 2009 WL 3158183, at *10.  Thus, the failure to obtain VE testimony regarding to what extent Moore's nonexertional limitations would erode his employment base evidences reversible error on the ALJ's part.

Accordingly, since the ALJ's step four analysis and reliance upon the grids at step five was improper, the Commissioner's decision on this issue should be reversed.

## E. Remand for Vocational Expert Testimony

A reviewing court has the authority to reverse with or without remand. 42 U.S.C. §§ 405(g), 1383(c)(3) (2003). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000) (citations omitted). While Moore's RFC was supported by substantial evidence yet his ability to return to his previous employment was not, remand is still necessary with respect to the Commissioner's analysis at step five. During the course of the remand, testimony from a vocational expert should be obtained to determine the effect that Moore's nonexertional impairment has, if at all, on his ability to become employed. Pronti v. Barnhart, 339 F. Supp. 2d 480, 487 (W.D.N.Y. 2004) (remanding case and stating that VE testimony "may [be] require[d] . . . regarding the effect that any nonexertional . . . impairment may have on plaintiff's ability to perform basic work activities.").

## III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that the Commissioner's decision denying disability benefits be **REMANDED**.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C §636(b)(1); FED

R. CIV. P. 72, 6(a), 6(e).


Date: February 5, 2013
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge